529 P.2d 1304

**UNIVERSITY OF UTAH MEDICAL CENTER, Appellant,**

v.

**BONNEVILLE COUNTY and the Department of Public Assistance, Respondents.**

No. 11222.

Supreme Court of Idaho.

July 3, 1974.

Kerr & Williams, Blackfoot, for appellant.

W. Anthony Park, Atty. Gen., Boise, Don Burnett, Asst. Atty. Gen., Pocatello, for respondent Dept. of Public Assistance.

Robert Fanning, Bonneville County Pros. Atty., Seward H. French, Idaho Falls, for respondent Bonneville County.

McQUADE, Justice.

The plaintiff-appellant is a licensed hospital located in Salt Lake City, Utah. In 1970, the appellant furnished services to Ellis Potter and Ireta Strong, residents of Bonneville County, Idaho. Both patients were approved as indigents entitled to treatment for conditions threatening their lives and health by the Department of Public Assistance of Idaho. Potter was admitted for an esophogoscopy, biopsy, gastrostomy and repair of hiatal hernia on May 8, 1970, and discharged on September 8, 1970. Strong was admitted due to extensive second and third degree burns on August 23, 1970, and transferred to a burn center in Texas on October 7, 1970, where she died on October 13, 1970.

The Department of Public Assistance paid for the expenses and services rendered by the appellant for the first twenty days in each case, but refused to pay the remainder. Potter's remaining balance is $7,200.26, and Strong's remaining balance is $5,146.79.

After the Department of Public Assistance refused to make full payment, the appellant wrote the clerk of the Board of County Commissioners of Bonneville County requesting payment. On December 15, 1970, the Bonneville County prosecuting attorney responded on behalf of the Bonneville County Commissioners and refused payment on the grounds that no application was made to the County prior to the time the medical expenses were incurred. Verified and itemized claims were filed with Bonneville County on January 20, 1971, and payment was again refused. The appellant then filed an action against the County and the Department of Public Assistance, and summary judgment was entered in favor of both defendants.

There are two issues in this appeal. The first issue is whether Bonneville County properly refused payment of the claim for medical services. The second issue is whether the Department of Public Assistance can validly limit payment for medically needy indigents to twenty days.

The County Commissioners are authorized by I.C. § 31–3407 to pay necessary medical expenses of indigent persons, but before payment can be authorized a certificate of need must be obtained from the magistrate's court or the clerk of the Board of County Commissioners. The certificate must be obtained and the treatment approved by the Commissioners before medical services are rendered. There is an exception to the prior approval requirement which states:

"Provided further that a claim against the county shall be allowed for services rendered prior to obtaining the certificate heretofore mentioned where a licensed hospital renders the services to an indigent sick person in an emergency and subsequently there is obtained said certificate heretofore mentioned. Services rendered in an emergency are defined as those reasonably necessary to alleviate illness or injury which if untreated is apt to maim or cause death. Such services shall be paid for by the county of residence of the indigent sick and, if not a resident of Idaho, by the county where the indigent sick became ill or was injured. Bills for such expenditures, duly verified under oath, must be presented to said board and the board must audit and pay such bills out of the proper fund of such county, at their next regular meeting."[1]

Since no prior applications for a certificate of need were made in this action, the only means for the appellant to obtain reimbursement is to obtain the certificate of need and prove to the County Commissioners that it was an emergency situation and that the medical expenses were incurred.

Approval of medical expenses for payment by the County rests solely with the County Commissioners pursuant to I.C. § 31–3407, but before the County Commissioners can consider a claim for payment of medical expenses, a certificate of need must be obtained from the magistrate's court or the clerk of the county commissioners. The issuance of the certificate and the approval and payment of medical expenses are two separate functions.

The procedure and requirements for obtaining a certificate of indigency are set forth in I.C. § 31–3404:

"*Application for county aid.*—Any sick or indigent person desiring aid from any county of this state, must, before such aid can be given, make a written application to the probate judge, the clerk of the board of county commissioners, or to any justice of the peace in the precinct where such applicant may reside, setting forth and describing all the property, real, personal and mixed, wherever it is situated, owned in whole or in part by such applicant, or in which he or she has any legal or equitable interest; if such applicant have no available property, real or personal, then he must declare his indigency and destitution, which must be

1. I.C. § 31–3407.

signed by the party or parties making such application and sworn to before some officer authorized by the laws of this state to administer oaths, and filed in the office of the clerk of the board of county commissioners: Provided, however, except in the case of emergency or extreme necessity no person shall receive the benefit of this chapter who shall not have been a resident of the state of Idaho for at least one (1) year and of the county at least six (6) months next preceding the application for county aid."

And, I.C. § 31–3405:

*"Investigation of application—Certificate.*—It is the duty of the probate judge, clerk of the board of county commissioners, or the justice of the peace to whom such application is made, to immediately investigate the grounds of such application, and for such purpose he may require the applicant, and such other persons as may be deemed necessary, to testify under oath, and if such officer is fully satisfied that said applicant is really sick, indigent and in destitute circumstances, and would suffer unless aided by the county, he must file a certificate to that effect with the clerk of the board of county commissioners of such county."

The appellant is permitted under I.C. § 31–3408 to apply for the certificate on behalf of Potter and Strong if they are unable to fulfill the requirements because of their illness.

 The appellant's letter of November 24, 1970, to the clerk of the Board of County Commissioners did not contain all the information as required by I.C. § 31–3404 concerning the indigency of Potter and Strong. The appellant points out that both patients had qualified as indigents under the Department of Public Assistance requirements, but that alone does not satisfy the duty imposed by I.C. § 31–3404 upon the clerk of the County Commissioners. The indigency qualification findings by the Department of Public Assistance would be useful to the appellant in presenting the required materials to the clerk, and they would also aid the clerk in his investigation.

 Although the appellant's letter of November, 24, 1970, and the certified and verified claims filed January 20, 1971, did not contain all the necessary information regarding the patients' indigency, the material would aid the clerk in finding that the "applicant is really sick" and that the applicant "would suffer unless aided." Instead of requesting additional information concerning indigency or at least pointing out the requirements of I.C. §§ 31–3404 and 31–3405, the prosecuting attorney answered the appellant's letters and filings with the statement that the claim was being denied by the County Commissioners because it was not filed prior to rendering medical services. The appellant has never received a denial of eligibility from the clerk of the County Commissioners. The trial court's summary judgment for Bonneville County must be affirmed because the appellant never properly pursued the administrative requirements of I.C. § 31–3404 to obtain a certificate of need. The County Commissioners may not consider payment of the claim until the certificate of need is obtained and therefore the trial court correctly held that the County was not presently liable for the medical expenses. The appellant must obtain certificates of need before presenting its claim to the County Commissioner.

The second issue concerns the Department of Public Assistance's limitation on payments for the medically needy. Idaho receives federal funds under Title XIX of the Social Security Act to assist with the program involved here. Title XIX, however, does not compel Idaho to furnish unrestricted hospital care. Title XIX requires that a state plan must pay reasonable costs of in-patient services *as provided under the plan.*[2] The Secretary of Health, Education and Welfare is responsible for approving state plans.[3] There is no evi-

2. *See:* 42 U.S.C. § 1396a(a)(13)(D) (1970).

3. 42 U.S.C. § 1396a(b) (1970).

dence present which would indicate that the Idaho plan does not have such approval.

■ The powers of the state department[4] are found in the Idaho Public Assistance Law.[5] I.C. § 56–202 states in pertinent part:

"The state department shall:

(a) Administer public assistance and social services to people who are in need;

(b) Establish and enforce such rules and regulations and such methods of administration as may be necessary or proper to carry out the provisions of this act * * *."

Another statute important in determining state liability in this case is I.C. § 56–209b, which provides,

"*Medical assistance shall be awarded* to persons who are recipients of old-age assistance, aid to dependent children, aid to the blind, aid to permanently and totally disabled and *to such other persons as may be defined under the authority of this act to be medically needy individuals.*" (Emphasis added.)

General authority for the amount of assistance is found in I.C. § 56–210, which provides:

"The amount of assistance which any recipient shall be eligible to receive shall be determined, in accordance with the rules and regulations of the state department, with due regard to his requirements, and the conditions existing in his case, and to the income and resources available to him from whatever source, and which shall be sufficient, when added to the income and resources determined to be available to him, to provide him with a reasonable subsistence compatible with health and his well-being:

provided that the department may disregard income to the extent and in the manner permitted or required by the public assistance titles of the Social Security Act as now or hereafter amended or other federal legislation affecting federal financial participation in his assistance."

I.C. § 56–203(i), another statute dealing with the amount of assistance provides:

"The state department shall have the power to:

\* \* \* \* \* \*

(i) Determine the amount, duration and scope of care and services to be purchased on behalf of needy eligible individuals * * *."

These statutes, when read together, indicate a legislative desire to provide adequate medical services to eligible recipients. Interpretation of regulations promulgated pursuant to these statutes must be done in light of this legislative desire.

The specific twenty day limit on hospital care is found in the Eligibility Manual, Department of Social and Rehabilitation Services, § 3162. That section reads in pertinent part:

"3162.1

Subject to the limitations of Section 3162.2 [not applicable here] the following are the items of care and services, and the amounts and/or duration of each that are available as medical assistance: (7–1–66)

(a) Hospitalization in semi-private accommodations in licensed hospitals for not more than 20 days for each admission including the first three pints of whole blood (when it is not available to the patient from other sources), all necessary services and necessary supplies furnished by the hospital for and during the hospitalization; (5–1–68)

---

4. The "department" as used in this case refers to the old Department of Public Assistance. Since the time of the events involved here, the name of this agency has been changed twice, first to the Department of Social and Rehabilitation Services and more recently to the Department of Community and Environmental Services.

5. *See:* I.C. § 56–203.

(b) Treatment in a hospital of medical or surgical conditions of any nature which are a threat to the life or health of a patient; (7–1–66)

(c) When related to the diagnosis and treatment of medical conditions; diagnostic tests and procedures, including laboratory tests and pathological and x-ray examinations, provided on either inpatient or out-patient basis, when ordered by the attending doctor of medicine or osteopathy; (5–1–68)

(d) Treatment of medical or surgical conditions, wherever needed, by doctors of medicine or osteopathy, subject to the limitations of practice imposed by State law; (5–1–68) * * *."

It should be noted that § 3162.1(b) has been in effect since 1966, while § 3162.-1(a), (c) and (d) were added in their present form to the manual in 1968. The addition of revised sections (a), (c) and (d) amplified the existing standards and set forth specific and separate categories.

█ Appellant, hospital, and respondent, Bonneville County, are correct in asserting that under Eligibility Manual § 3162.1(b) and (d), the state had a duty to furnish assistance beyond the twenty days set forth in § 3162.1(a). The terms "hospitalization" as used in § 3162.1(a) and medical "treatment" as used in § 3162(b), (c) and (d) are apparently not synonymous, otherwise there would have been no need to keep subsection (b) in the regulations after the enactment of revised subsection (a) in 1968. "Hospitalization" has been defined as the placing of a sick person in a hospital for care and treatment

by those in charge.[6] Medical and surgical "treatment" has been defined as follows:

" '[t]reatment' is a 'broad term covering all steps taken to effect a cure of the injury or disease,' including 'examination and diagnosis as well as application of remedies.' "[7]

The state is responsible for *all* expenses during the first twenty days. After that period, as stated in § 3162.1(a), it is no longer responsible for "hospitalization" and related service and supply costs such as daily nursing surveillance and meals. However, the state is still responsible for "treatment" as set forth in § 3162.1(b), (c) and (d). The ascertainment of which category these expenses fall under is a question of fact to be determined by the trial court.

The summary judgment in favor of Bonneville County is affirmed. The summary judgment in favor of the Department of Public Assistance is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Costs to appellant.

SHEPARD, C. J., and DONALDSON and BAKES, JJ., concur.

McFADDEN, J., concurs in conclusion.

McFADDEN, Justice, with whom DONALDSON, Justice, joins, concurring specially.

I concur in the conclusion of the majority opinion, but wish to express my views regarding certain provisions of Chapter 34 of Title 31, Idaho Code.[1]

---

6. Edwards v. West Texas Hospital, 89 S.W. 2d 801, 815 (Tex.Civ.App.1936).

7. Pfahler v. Eclipse Pioneer Div. of Bendix Aviation Corp., 21 N.J. 486, 122 A.2d 644, 648 (1956).

1. The basis of Chapter 34, Title 31, Idaho Code, is to be found in legislation enacted

during the territorial days of this state which made provision for the care of indigent sick people. 13th Session Territorial Legislature, 1885, p. 127. The 1885 legislation is the same, except for some minor amendments, as I.C. §§ 31–3404, 31–3405; R.S. 1887, §§ 2173, 2174, 2175, pp. 282–283; S.L. 1911, Ch. 155, § 1, p. 475.

I.C. §§ 31–3404 to 31–3408 inclusive provide for the furnishing of help by a county to indigent sick persons and establish the procedure for obtaining such help. Those provisions contemplate that any ill person may make a written application for help to a magistrate (formerly probate judge or justice of the peace) or the clerk of the board of county commissioners, which application must declare his indigency and destitution and a listing of his property. I.C. § 31–3104. In the event the sick and indigent person desiring assistance is unable from illness to make the application, this may be made on his behalf by any other person. I.C. § 31–3408.

Upon receipt of such an application the officer must investigate into the applicant's resources and if such officer "is fully satisfied that said applicant is really sick, indigent and in destitute circumstances, and would suffer unless aided by the county" such officer must so certify and file his certificate with the clerk of the board of county commissioners. I.C. § 31–3405. The board of county commissioners then must consider the certificate and "if in their judgment the applicant is sick and indigent, and would suffer if not aided by the county, make such provisions for his relief as may be necessary under the circumstances." I.C. § 31–3406. The statute also provides that if the board of county commissioners is not in regular session, the officer may in his discretion authorize the applicant to be placed in the county hospital, or if there is no hospital then the officer may authorize an expenditure of not to exceed $40.00. I.C. § 31–3405. And a member of the board of county commissioners, if the board is not in session, may authorize such expenditure of up to $50.00. I.C. § 31–3407.

The statute also provides that the board of county commissioners shall not allow any claim against the county for services rendered a sick or indigent person who has not previously obtained a certificate. I.C.

§ 31–3407. An exception is provided, however, in the case of an emergency.

" * * * a claim against the county shall be allowed for services rendered prior to obtaining the certificate heretofore mentioned where a licensed hospital renders the services to an indigent sick person in an emergency and *subsequently there is obtained said certificate heretofore mentioned.*" I.C. § 31–3407.

The foregoing contemplates that in an emergency situation a licensed hospital may render aid to a person, but in my opinion such aid may not be continued beyond the "emergency" period until a certificate is obtained. It is my further opinion that once a certificate is obtained, the statutes contemplate that such certificate shall be first submitted to the board of county commissioners for them to approve or disapprove further treatment beyond the immediate emergency needs. This conclusion is reached because of the following provisions of I.C. § 31–3407.

"Services rendered in an emergency are defined as those reasonably necessary to alleviate illness or injury which if untreated is apt to maim or cause death. Such services shall be paid for by the county of residence of the indigent sick and, if not a resident of Idaho, by the county where the indigent sick became ill or was injured. Bills for such expenditures, duly verified under oath, must be presented to said board and the board must audit and pay such bills out of the proper fund of such county, at their next regular meeting."

In summary, as I read these statutory provisions, in an ordinary case, an ill or injured indigent person in order to obtain help from the county must first file an application, declaring his indigency and listing his assets. The application may be submitted to a magistrate, or the clerk of the board of county commissioners. Such officer must then investigate the applica-

tion, and if he approves the application, it is to be submitted to the clerk of the board of county commissioners, which board if in session, shall then authorize or reject the application. If the board is not in session, the officer, or a member of the board of county commissioners may authorize a limited expenditure. Thereafter, if the help is to continue beyond a limited expenditure, it is my opinion that such application must be approved by the board of county commissioners.

In an emergency situation a licensed hospital may give the necessary emergency treatment to the person, but such treatment shall not continue beyond the time reasonably necessary to alleviate the immediate need. If the treatment is to continue beyond that time, then before any liability may be incurred against the county, it is necessary that the certificate be submitted, investigated, submitted to the board of county commissioners, and either approved or rejected by them.

In the instant case the hospital failed to take the steps requisite before an obligation could arise against the county after the immediate emergency had been alleviated. Thus no liability was incurred by the county.