No. 27,532.

THE BOARD OF EDUCATION OF THE CITY OF HUTCHINSON, *Appellee,*
v. RENO COMMUNITY HIGH SCHOOL, *Appellant.*

(257 Pac. 957.)

SYLLABUS BY THE COURT.

SCHOOLS — *Tuition* — *Students Attending Adjacent High School* — *Approval by Superintendent.* The evidence fully considered as to the approval of the students attending the Hutchinson high school from the Reno community high-school district and held to be an approval in substantial compliance with the requirements of R. S. 72-2505.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge.. Opinion filed July 9, 1927. Affirmed.

*C. M. Williams, D. C. Martindell, W. D. P. Carey* and *E. T. Foote,* all of Hutchinson, for the appellant.

*C. E. Branine, H. R. Branine* and *H. F. Brown,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The board of education of the city of Hutchinson sued the Reno community high school to recover tuition for each student attending the high school in the city of Hutchinson whose residence was in the Reno community district for a period of nine weeks commencing on March 20, 1923, and ending with the close of the school session of that year in June, at the rate of $2 per week. This action was brought under the provisions of chapter 187 of the Laws of 1923, which took effect March 20, 1923. The defendant district filed a general denial, and the case was tried before the court without a jury and judgment rendered in favor of the plaintiff for $1,188 for 66 students at $2 a week for 9 weeks. The defendant school district appeals, and contends that plaintiff should not recover because of the failure of the county superintendent to approve the attendance of these students as the law requires. Section 1 of said law is as follows:

"That upon the taking effect of this act, all county high schools in the state of Kansas, regardless of acts under which created, shall be disorganized and in their stead shall be created community high schools whose territory shall include all the territory in said counties not included in the territory of other accredited high schools. Such schools so organized and established shall be known and styled 'community high schools.'" (R. S. 72-2501.)

Schools and School Districts, 35 Cyc. p. 1121 n. 92 new.

A part of section 5 is as follows:

"That instruction in said community high schools shall be free to all pupils living within the boundaries of said community high-school districts. If any pupil, living within the boundary of said community high-school district, shall, with the approval of the county superintendent, attend any other high school, either approved or accredited, outside the boundaries of said community high school, the board of trustees of said community high school shall pay or cause to be paid into the treasury of the said high school which said pupil attends a tuition fee of two dollars per week for the time such pupil is in actual attendance at said high school." (R. S. 72-2505.)

The evidence upon the trial shows that all these sixty-six students were before March 20, 1923, attending the Hutchinson high school and were paying their tuition of two dollars per week themselves, and that immediately after this law took effect on March 20, 1923, the students and their parents in great numbers interviewed the county superintendent for the purpose of being relieved of this payment and having the responsibility shifted to the Reno community district. The county superintendent accordingly within a few days after March 20, called up the superintendent of the city schools of Hutchinson and told him: "You must not charge tuition any more to the students who are in the community district," and told him of the new law going into effect, and further said, "I wish you would prepare a list of the names and legal description of their residences." In accordance with such instruction no further collection was made for any of these sixty-six students, and the list was duly prepared by the clerk of the board of education and sent to the county superintendent, but not until near the close of the school year in June. The list showed not only the names and exact location of their residences but also the number of weeks each student had attended the school after March 20, and was summarized as a statement or bill to be presented to the defendant community district. The county superintendent indorsed his approval on the back of this statement and sent it to the proper officers of the defendant community district. This statement was lost, and the court heard oral evidence as to its contents. The defendant community district contends that this statement with the approval of the county superintendent indorsed thereon was not the nature and character of the approval designed and intended by the statute; that the approval necessary was of a preliminary character when the student or his parents wanted him to have the privilege of attending the Hutchinson city high school; that before he could have that privilege at the expense of the com-

munity district itself he must get the sanction and approval of the county superintendent, and until that was obtained he was attending the city high school on his own responsibility and at his own expense; and that he should on his own motion have procured for himself the sanction or approval of the county superintendent before he should continue in his attendance upon the city high school after March 20 if he expected the community district to pay his tuition; and because there was no such formal and written approval at the beginning of this period the defendant school district disallowed the claim when it was presented. It is further contended in this appeal that the lower court in his written opinion did not find that there was the approval contemplated by the statute; and a portion of the opinion of the trial judge is set out in the brief for the purpose of showing that the trial judge was not satisfied with what was done as being sufficient approval as contemplated by the statute, the portion quoted being as follows:

"In this case I find for the plaintiff. It is probably true that the law under which the plaintiff claims was not strictly complied with, and if the matter had arisen at a subsequent school year I would be inclined to hold against the city; but the law itself and the regulations and compliance therewith have to be considered and determined in the light of the peculiar circumstances and surrounding conditions that existed when the law went into effect. . . ."

If there should be any doubt in the mind of anyone as to the satisfaction of the trial court with the proof in this case he need go no further than to read two other paragraphs in the opinion, which are as follows:

"Now it would not be reasonable or common sense to say that those scholars had to quit school upon the passage of this law and remain out until the county superintendent could secure advice and formulate rules and comply strictly with the requirements and all the details of the act before they could go back into school. . . . I believe, and therefore find, that the law in all respects was complied with and that the various pupils received the proper approval of the county superintendent to attend the high school in the city of Hutchinson to make the Reno community high school district of Nickerson subject and liable for their tuition, and judgment will be rendered accordingly."

If it is to be seriously contended that the written approval was made later than was contemplated by the statute we think no one can be harmed or even inconvenienced by the report being made at the close of the session instead of at the beginning, especially, as the

trial judge says, when the beginning of the period under consideration was in the midst of the school year, starting at an arbitrary date having no connection whatever with the beginning or ending of a term or semester or other school division period. Again, the statute does not require that the approval be in writing, and the telephone message given by the county superintendent to the superintendent of city schools almost immediately after the law took effect would in itself surely be an approval of those students in attendance at that time; and to base this act of approval by telephone upon substantial facts he asked at that time for a list of the names and residences of all such students so that he could confirm his act of approval by eliminating therefrom any that should be so eliminated, as was afterwards done by him in the written approval at the close of the school year.

There is nothing strange or unusual about the word "approval" that would call for any special definition as used in this connection. The statute says, "if any pupil, living within the boundary of said community high-school district, shall, with the approval of the county superintendent, attend any other high school. . . ."

"To 'approve' is in its essential and most obvious meaning to confirm, ratify, sanction, or consent to some act or thing done by another." (1 Words and Phrases 260.)

Surely the act of the county superintendent in telephoning to the superintendent of the city schools was an approval within the meaning of the statute. It certainly would confirm, ratify, sanction or consent to these high-school students attending the city high school, and if this was not sufficient in itself then we have the later approval in writing in connection with the statement rendered showing all the details as to name, residence, time of attendance, etc. We think the acts of the county superintendent constitute a sufficient compliance with the requirements of the statute with reference to approval.

The judgment is affirmed.