714 P.2d 45

**HOLLY CARE CENTER, Employer Ac-
count # 1175920, Employer-Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF
EMPLOYMENT, Respondent.**

No. 15710.

Supreme Court of Idaho.

Jan. 31, 1986.

William J. Brauner, Caldwell, for employer-appellant.

Jim Jones, Atty. Gen., and Roger T. Martindale (argued), Deputy Atty. Gen., Boise, for respondent.

BISTLINE, Justice.

Holly Care Center is required under Idaho's Employment Security Law to make contributions to Idaho's employment security fund based upon taxable wages it pays each calendar year. Prior to the second quarter of 1983, Holly Care's contribution rate was 1.1 percent. The legislature increased that rate to 1.7 percent beginning

the second quarter of 1983. 1983 Session Laws, ch. 146, §§ 4, 5, and 9.

Holly Care's 1983 second quarter report was due July 31, 1983. That report and the accompanying check covering its contribution were not, however, received by the Department of Employment until September 12, 1983. Not only were the report and the tax payment delinquent, but the tax payment failed to include the .6 percent tax rate increase that became applicable that quarter. This added amount is $356.33.

Holly Care claims that it never knew of the tax increase, and that it never was notified of its delinquency. The Department introduced testimony that it mailed notices to Holly Care's last known address, which is its present address, and that no notices were ever returned by the post office as undeliverable.

Holly Care failed to make up the $356.33 difference until December 1983. Holly Care claims that it thought it was paid up in its tax account when it delivered its check to a Department tax representative on September 12. September 30, 1983 was the cutoff date by which Holly Care should have made up the difference if it wanted to continue to operate under the 1.7 percent tax rate. I.C. § 72–1317. Up to the time it was delinquent on its account, Holly Care had been classified as an "eligible employer." I.C. § 72–1319.[1] This entitled it to a 1.7 percent tax rate. As a result of the delinquency, however, the Department ruled that Holly Care was no longer an "eligible employer" but a "standard-rated employer," and therefore subject to the higher 4.1 percent tax rate.

Holly Care appeals, arguing, in essence, that the Department arbitrarily determined that its delinquency was a "major" one,

---

1. I.C. § 72–1319 reads, in pertinent part, as follows:

> 72–1319. Eligible employer.—(a) To determine experience ratings for the year 1969 and every calendar year thereafter, the term "eligible employer" means a covered employer who has completed a qualifying period as defined in subsection (b) of this section, and who has filed all payroll reports required, has paid, on or before the cut-off date, all contributions

> and penalties due and has established a record of accumulated contributions in excess of benefits charged to his account. *For the purposes of this section, delinquencies of a minor nature may be disregarded if showing is made to the satisfaction of the director that such covered employer has acted in good faith and that forfeiture of a reduced contribution rate because of such minor delinquency would be inequitable.* (Emphasis added.)

thereby subjecting it to a higher tax rate. The issue focuses around (1) I.C. § 72-1319, which, as quoted in the footnote 1, states that a "minor" delinquency will not preclude an employer from being classified as an "eligible employer" and entitled to the lower 1.7 percent tax rate, and (2) Idaho Department of Employment Rules 09.-35.062 and .063, which define a "minor" delinquency as an unpaid unemployment insurance contribution totaling less than $20. The Department, pursuant to its rules and § 72-1319, ruled that Holly Care was no longer an "eligible employer" because its delinquency after September 30, 1983 was in excess of $20. Therefore, the Department ruled that Holly Care should now be required to pay the higher tax rate. The Industrial Commission affirmed the Department's ruling. We reverse and remand.

## I. STANDARD OF REVIEW

The thrust of Holly Care's appeal is that Department of Employment Rules 09.35.-062 and .063—which define "major" delinquencies as all those involving amounts greater than $20—are arbitrary and capricious, and therefore invalid. We agree with Holly Care that the rules are invalid, but do so because the rules in question conflict with controlling statutory law.

We begin by noting that there is no serious question about the authority the Department of Employment has in promulgating rules relating to Idaho's Employment Security Law. I.C. § 72-1333 states, in pertinent part, the following:

(a) It shall be the duty of the director to administer this act. The director shall have the power and authority to employ such persons, make such expenditures, require such reports, make such investigations, perform such travel pursuant to the provisions of this act, *and take such other actions as he deems necessary or suitable to that end....*

(b) *The director shall have the power and authority to adopt, amend, or rescind such rules and regulations as may be necessary for the proper ad-*ministration *of this act,* subject, however, to prior approval by the governor of the proposed action. (Emphasis added.)

Furthermore, properly promulgated administrative rules have the force and effect of statutory law. *Higginson v. Westergard,* 100 Idaho 687, 690, 604 P.2d 51, 54 (1979). Nevertheless, it is also the law that administrative rules are invalid which do not carry into effect the legislature's intent as revealed by existing statutory law, and which are not reasonably related to the purposes of the enabling legislation. *Halford v. City of Topeka,* 234 Kan. 934, 677 P.2d 975, 980–81 (1984); *Ferguson v. Arizona Department of Economic Security,* 122 Ariz. 290, 594 P.2d 544, 546 (1979); *Kelly v. Zamarello,* 486 P.2d 906, 911 (Alaska 1971).

In Howard v. Missman, 81 Idaho 82, 88, 337 P.2d 592, 595 (1959), this Court stated that traffic rules and regulations, "lawfully adopted and placed by administrative authority, *and which are not merely arbitrary or capricious,* have the force and effect of law...." That statement is equally applicable to other types of administrative acts, including, as we have here, rulemaking.

Thus, our inquiry is whether the rules here in question are consonant with I.C. § 72-1319—the legislature's expressed intent on determining major and minor tax delinquencies—and whether the rules are reasonably related to that section. Because we hold that the rules fail on both accounts, we reverse the Industrial Commission's decision.

## II. THE STANDARD APPLIED

■ It is necessary to reread I.C. § 72-1319. It states in pertinent part:

For the purposes of this section, delinquencies of a minor nature may be disregarded *if showing is made to the satisfaction of the director* that such covered employer has acted in good faith and that forfeiture of a reduced contribution rate because of such minor delinquency would be inequitable.

It is evident that the legislature intended a distinction to be made between employers with major tax delinquencies and employers with minor tax delinquencies. It is further evident that those employers with minor delinquencies may be excused by the director of employment from their errors and allowed to continue in the favorable tax bracket where there is a showing that they have acted in good faith and that removing the favorable tax status would be inequitable. We were told at oral argument, however, that the Department has initiated no procedure for the director to hear equitable petitions under § 72–1319.

Administratively determining that *any* delinquency over twenty dollars is a "major" delinquency renders virtually meaningless the statutory distinction the legislature intended; it takes little business acumen to know that in this day of increasing tax rates, higher wage scales and larger numbers of employees per employer, the possibility of even one minor accounting error, entirely accidental and unnoticed, could all too frequently still result in a tax delinquency exceeding twenty dollars. To declare by rule that all tax delinquencies in excess of twenty dollars are major tax delinquencies is incompatible with I.C. § 72–1319.

 To accommodate the legislature's intent, as spelled out by I.C. § 72–1319, the Department of Employment must allow a procedure for the director to consider the employer's explanation for becoming delinquent. What is a "major" delinquency to one employer may be a "minor" delinquency to another.[2] Furthermore, for those delinquencies that are minor, the Department must further decide if the employer has acted in good faith and if removal of the employer's favorable tax status would be inequitable. That is the legislature's command to the Department—not this Court's—and that is what I.C. § 72–1319 obligates the Department to do.

 Defining away into oblivion that which constitutes a "minor" delinquency

was not a viable option made available to the Department by the legislature. We therefore hold that Department of Employment Rules 09.35.062 and .063 are invalid because they contravene statutory law by erasing, for all practical purposes, distinctions that were legislatively created and mandated.

### III. A.

The Department argues that the rules in question are not in conflict with the intent of the legislature, and cites to I.C. § 67–5218 as support for this position. That section must be read in conjunction with I.C. § 67–5217. Together the two sections detail an attempt on the legislature's part to review, change, modify, or reject rules promulgated by various state administrative agencies. The two sections state in pertinent part the following:

67–5217. Transmittal of rules for legislative action—Referral to appropriate legislative committee.—All rules heretofore or hereafter authorized or promulgated by any state agency, including all rules kept and maintained by the state law library, as provided in chapter 52, title 67, Idaho Code, shall be transmitted to the secretary of the senate and the chief clerk of the house of representatives by the law librarian of the state law library before the first day of the regular session of the legislature next following the promulgation or publication thereof. A statement, separate from the rules, shall be prepared by the promulgating agency and shall accompany each new rule or amendment to an existing rule adopted during the preceding year. The statement shall include: (a) the full text of the rule prepared so as to indicate words added or deleted from the presently effective text, if any; (b) an explanation of each change made and the effect thereof; (c) the date of adoption; (d) whether the rule was adopted as an emergency rule; and (e) whether hear-

---

2. This suggests that the determination of major and minor delinquencies hinges upon the size of the tax delinquency *vis a vis* the size of the delinquent corporation's tax responsibilities.

ings were held prior to adopting. The law librarian of the state law library shall similarly file during any regular session of the legislature all rules promulgated, and the required statement, between the first day of the session and adjournment sine die thereof. The secretary of the senate and the chief clerk of the house of representatives shall lay all such rules before the senate and house of representatives, respectively, and the same shall be referred to the respective standing committees in the same manner as bills are referred to the committees.

67–5218. Committee action.—By the forty-fifth day following transmission by the law librarian, the standing committee to which rules have been referred shall report to the membership of the body its findings and recommendations concerning its review of the rules.... If the committee does not report by the forty-fifth day following transmission or prior to adjournment sine die if adjournment is more than twenty-one (21) but less than forty-five (45) days following transmission, such failure to report shall constitute legislative approval of the rules as submitted, except that no legislative approval shall be presumed if the legislature adjourns within twenty (20) days of the transmission, and the rules shall be transmitted by the law librarian to the next succeeding regular session, before the first day. If the committee to which any rule shall have been referred, or any member of the legislature, shall be of the opinion that such rule is violative of the legislative intent of the statute under which such rule was made, or, if any rule previously promulgated and reviewed by the legislature shall be deemed violative of the legislative intent of the statute under which such rule was made, a concurrent resolution may be adopted rejecting, amending or modifiying the same.... It shall be the responsibility of the secretary of state to immediately notify the affected agency of the filing and effective date of any concurrent resolution enacted to amend, modify, or reject an agency rule and to transmit a copy of such concurrent resolution to the director of the agency for promulgation. The agency shall be responsible for implementing legislative intent as expressed in the concurrent resolution, including, as appropriate, the reinstatement of the prior rule, if any, in the case of legislative rejection of the new rule, or the incorporation of any legislative amendments to the new rule. The agency shall republish the rule in accordance with section 67–5205, Idaho Code, reflecting the action taken by the legislature and the effective date thereof. Every rule promulgated within the authority conferred by law, and in accordance with the provisions of chapter 52, title 67, Idaho Code, shall be in full force and effect until the same is rejected, amended or modified by the legislature.

Three interpretations are possible with respect to the effect of any legislative action taken pursuant to these two sections. The first interpretation is that any resolution by the legislature concerning an administrative rule constitutes a mere "statement" or "opinion" about the rule, with the validity of the rule unchanged regardless of what the legislature does. The second interpretation is that the legislature intended to grant to itself an approval and veto power over administrative rules. The third interpretation is that the legislature intended not only to possess an approval and veto power over administrative rules but also to preclude judicial review of either the rule or the legislature's action with respect to the rule.

The first possible interpretation conflicts with some of the wording of I.C. § 67–5218. Within that section the legislature explicitly states that it can reject any rule it deems to be "violative of the legislative intent of the statute under which such rule was made...." The section also states that the legislature can approve rules. Thus, the scope of what the legislature is attempting to do seems far broader than the mere issuance of an advisory opinion about the validity of a rule.

The third possible interpretation, while possible, does not appear to be the likely intent of the legislature in enacting these sections. The language of I.C. § 67–5218 that invites the third interpretation is the following: "Every rule promulgated within the authority conferred by law, and in accordance with the provisions of chapter 52, title 67, Idaho Code, shall be in full force and effect until the same is rejected, amended or modified by the legislature." One could read this as saying that such approval of rules is valid and in full force *only* until the legislature changes its mind at some future date.

We do not feel at liberty to so interpret these sections. There is no express language evidencing such an intent on the legislature's part, and we decline to read into these sections such a broad and potentially unconstitutional exercise of power. *State v. Newman,* 108 Idaho 5, 13 n.12, 696 P.2d 856, 864 n.12 (1985).

That leaves us with the second interpretation, which is that the legislature has attempted to give to itself the power both to review administrative rules and to approve, modify, or veto them as the case may be. This interpretation is most harmonious with the wording of I.C. §§ 67–5217 and –5218. It also is buttressed by wording found in the title to the Act which contains these two sections. The title states in pertinent part that it is the intent of the legislature to provide "for legislative review of administrative rules [and to empower] the legislature to reject, amend or modify such rules by resolution." 1969 Idaho Session Laws, ch. 48, pp. 125–26.

■ Thus, with the intent of I.C. §§ 67–5217 and –5218 kept in mind, the issue before us becomes one of inquiring into what legal impact, if any, such legislative action has upon this Court. For the reasons that follow, we hold that any legislative *approval* of a rule, which is granted pursuant to I.C. §§ 67–5217 and –5218, has merely a non-binding advisory effect upon this Court in its resolution of legal issues such as that before us in the present case.

### B.

The Idaho Constitution grants to this Court the judicial power of the state. Idaho Const. art. 5, § 2. Article 5, § 13 of the Idaho Constitution limits the legislature's power when it involves state courts exercising their judicial powers. It states in pertinent part:

§ 13. Power of legislature respecting courts.—*The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government;* but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with this Constitution.... (Emphasis added.)

In commenting on this section, Justice Morgan stated: *"It is not, in the constitution, anywhere directed or permitted that the legislature, having enacted a law, shall dictate the interpretation or construction to be placed upon it." State v. Barnes,* 55 Idaho 578, 588, 45 P.2d 293, 297 (1935) (Morgan, J., concurring) (emphasis added). Other decisions by this Court affirm that principle. In *State v. McCoy,* 94 Idaho 236, 240–41, 486 P.2d 247, 251–52 (1971), this Court declared:

This Court has in the past been very circumspect in protecting the autonomy envisioned by the judiciary within our constitution.... This Court always must be watchful, as it has been in the past, that no one of the three separate departments of the government encroach upon the powers properly belonging to another.

In *Scott v. Gossett,* 66 Idaho 329, 335, 158 P.2d 804, 807 (1945), this Court approvingly quoted *In re Speer,* 53 Idaho 293, 300, 23 P.2d 239, 241 (1933), in declaring:

"It is the duty of the legislature to make the laws, and, in enacting [I.C.] sec. 18–102, it functioned within the

scope of that duty. *It was the duty of the court to interpret that statute, and it did so in the Lockman case. In re Lockman, 18 Ida. 465, 110 P. 253, 46 L.R.A.(N.S.) 759.*" (Emphasis added.)

■ We reiterate that which declared in *Speer* and *Gossett*: it is this Court's duty to interpret the law. Within that duty is the responsibility of deciding whether an administrative rule contradicts the wording of a statute. It would be contrary to our oaths of office, that we uphold the Constitution of the State of Idaho, to permit the legislature to decide what administrative rules do or do not conflict with statutory law, because this in essence would constitute an abrogation of the judicial power in violation of art. 2, § 1 and art. 5, §§ 2 and 13 of the Idaho Constitution.

■ We decline to interpret the legal effect of a legislative resolution approving an administrative rule pursuant to I.C. §§ 67–5217 and –5218 in an unconstitutional manner. *Newman, supra,* 108 Idaho at 13, n.12, 696 P.2d at 864, n.12. We therefore hold that such legislative resolutions, enacted pursuant to I.C. §§ 67–5217 and –5218, have no legal binding effect upon this Court when confronted with the question of whether such a rule conflicts with statutory law. Such resolutions at best have the legal effect of an advisory opinion similar to that which the attorney general issues on proper request.

■ Opinions of the attorney general are considered advisory and not binding on the courts. *O'Shaughnessy v. Wolfe,* 685 P.2d 361, 363 (Mont.1984); *Wulfkuhle v. State Department of Revenue,* 234 Kan. 241, 671 P.2d 547, 553 (1983); *Marston's, Inc. v. Roman Catholic Church of Phoenix,* 132 Ariz. 90, 644 P.2d 244, 248 (1982); *Prante v. Kent School District No. 415,* 27 Wash. App. 375, 618 P.2d 521, 526–27 (1980); *Goo-*

*din v. Board of Education of Independent School District No. 14 of McCurtain County,* 601 P.2d 88, 90–91 (Okla.1979). They are, however, entitled to deference. *Moore v. Panish,* 32 Cal.3d 535, 652 P.2d 32, 37, 186 Cal.Rptr. 475, 480 (1982); *Goodin, supra,* 601 P.2d at 91.

With these principles in mind, and for the reasons first stated above, we are of the firm conviction that the rules conflict with statutory law, specifically I.C. § 72–1319, and we so hold.

### IV.

It is important to keep in mind the issue we have decided in Part III of this opinion: the legal effect of legislative *approval* of an administrative rule on a court of law. Not before us, and left for another day and another case, is the legal effect of action by the legislature in *rejecting* an administrative rule. The legal efficacy of the legislative veto raises potentially serious constitutional issues, involving, among others, that pertaining to the presentment of bills and the fundamental principle of separation of powers.[3]

### V.

Our invalidating of Department Rules 09.35.062 and .063 today does not mean that Holly Care is automatically entitled to the favorable tax status it once enjoyed. I.C. § 72–1319 has yet to be applied. We therefore remand this case to the Industrial Commission, which may in turn decide to remand to the Department of Employment for the initiation of proceedings which are in accordance with the views herein expressed. *Reversed and remanded.*

Costs to Holly Care; no attorney's fees on appeal.

HUNTLEY, J., concurs.

---

**3.** We note that many courts, both state and federal, are now struggling with such issues. *See, e.g., I.N.S. v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (legislative veto unconstitutional); *General Assembly of State of New Jersey v. Byrne,* 90 N.J. 376, 448 A.2d 438 (1982) (legislative veto unconstitutional); *State ex rel. Stephan v. Kansas House of Rep.,* 236

Kan. 45, 687 P.2d 622 (1984) (legislative veto unconstitutional); *Opinion of the Justices,* 121 N.H. 552, 431 A.2d 783 (1981) (legislative veto unconstitutional); *State ex rel. Barker v. Manchin,* 279 S.E.2d 622 (W.Va.1981) (legislative veto unconstitutional); *State v. A.L.I.V.E. Voluntary,* 606 P.2d 769 (Alaska 1980) (legislative veto unconstitutional).

DONALDSON, C.J., and SHEPARD, J., concur in Parts I and II.

BAKES, J., concurs in the result.