868 P.2d 467

Kathryn Marie RHODES, Mike Jacobson, and Cheryl Jacobson, husband and wife, individually and on behalf of all claimants with industrial injuries; Idaho Migrant Council, Inc., and Humberto Fuentes, its Executive Director; United Food and Commercial Workers Union Local 369–A; David C. Ackley; G. Rich Andrus; James Arnold; Robert K. Beck; Clyel Berry; Cheri L. Bush; Andrew Chasen; James Combo; George Conrad; Roger Cox; Bradford Eidam; Dalon Esplin; Mark Freeman; Lori Freund; Jerry Goicoechea; Charles L. Graham; James Green; Jim C. Harris; William J. Hines; Keith Hutchinson; Joseph Jarabeck; Clark Jordan; Rick D. Kallas; Lawrence Kirkendall; Richard E. Kriger; Stratton Lammers; Lynn M. Luker; R. Brad Masingill; Albert Matsuura; Michael McBride; Byron Meredith; Jerry R. Meyers; John Mitchell; Thomas Mitchell; Hugh Mossman; David D. Peck; Raymundo G. Pena; Emil F. Pike; Delwin W. Roberts; Breck Seiniger; Bruce D. Skaug; Dale Smith; Stephen K. Stark; John E. Sutton; David K. Swanson; Michael J. Verbillis; Steve Verby; Timothy C. Walton; James L. Westberg; and Kenneth White, Petitioners,

v.

INDUSTRIAL COMMISSION of the State of Idaho, Gerald A. Geddes, Logan E. Lanham, and Betty L. Richardson, Commissioners, in their official capacity, Respondents.

Supreme Court of Idaho,
Boise, February 1993 Term.

Dec. 3, 1993.

Rehearing Denied Feb. 3, 1994.

Givens, Pursley, Webb & Huntley, Boise, for petitioners. Robert E. Huntley, Jr., argued.

Larry EchoHawk, Atty. Gen., and John W. Barrett, Asst. Atty. Gen., Boise, for respondents. John W. Barrett, argued.

McDEVITT, Chief Justice.

## STATEMENT OF THE CASE

Respondent, the Industrial Commission of the State of Idaho ("Commission"), has authority to adopt rules and regulations pursuant to I.C. § 72–508. The Commission must comply with the administrative procedures governing the enactment of administrative regulations codified as I.C. § 67–5203. In August 1992, based on extensive research [1] prompted by a major concern that fees charged by claimants' attorneys in workers' compensation cases were unduly high, the Commission published a draft of formal regulations which proposed mandatory attorney fee guidelines, and set dates for public hearings on the matter. At the hearings, the Commission received testimony from several persons representing the interest of workers, attorneys, labor unions, state agencies, and others. The testifiers were virtually unanimous in their opposition to the proposed regulations. The public expressed concern over the fate of small cases as well as difficult cases. The ultimate loser, the public concurred, is the injured worker whose access to unlimited, uninhibited legal representation is abridged.

At the administrative hearing on the matter on October 21, 1992, the Commission's staff counsel recommended against adoption of the proposed regulations because they were too broad. Nonetheless, the Commission, on a split vote of 2–1, adopted the regulations restricting the amount of legal fees recoverable by an attorney representing injured workers, citing I.C. § 72–803 as its source of authority. The Commission issued a "Statement of the Principle Reasons For and Against the Adoption of a Regulation Governing Attorney Fees in Workers' Compensation Cases," pursuant to I.C. § 67–5203(3). Commissioner Richardson wrote a dissenting statement. The regulations were to take effect December 1, 1992.

On November 13, 1992, petitioner Kathryn Marie Rhodes ("Rhodes"), along with the Idaho Migrant Council, the United Food and Commercial Workers' Union, and several Idaho attorneys, filed a petition in this Court on behalf of all claimants with industrial injuries for ex parte temporary stay, for stay pending hearing, for alternative writ of prohibition, and for peremptory writ of prohibition to prevent the Commission from implementing the disputed regulations until the dispute was settled by this Court. In support of the petition, Rhodes claimed that the regulations prejudiced the ability of injured employees to obtain legal counsel, appendicing communications in which attorneys declined to represent injured workers due to the fee cap. This Court granted the petition for ex parte temporary stay on November 25, 1992, with the Court ordering respondents to answer the other petitions within fourteen (14) days. Both the petitioner and respondent have filed briefs in this Court in support of and in response to, respectively, the petition for writ of prohibition.

---

1. The Commission reviewed a national survey of workers' compensation attorney fee practices prepared by the International Association of Industrial Accident Boards and Commissions and one prepared by the United States Department of Labor. In addition, the Commission prepared its own survey and disseminated the questionnaire to every jurisdiction in the country.

This Court must resolve the following issues:

I. Whether the Commission has exceeded its statutory authority by enacting a comprehensive regulation governing attorney fees for claimants' attorneys.

II. Whether the regulation enacted violates the United States Constitution or the Idaho Constitution.

## ANALYSIS

### I.

### STATUTORY AUTHORITY OF THE COMMISSION

 The adoption of the Administrative Procedure Act ("APA") in 1965, served as a general statutory grant of rule-making authority to administrative agencies to promulgate rules and regulations to effect the purposes of the specific acts they are required to administer. *See Mead v. Arnell*, 117 Idaho 660, 666, 791 P.2d 410, 416 (1990). In addition, the state legislature has, by statute, empowered the Commission to issue rules and regulations necessary to accomplish the purposes of the Workers' Compensation Act. I.C. § 72–508. The purpose of the Workers' Compensation Act, enacted under the broad canopy of the police power, is stated in I.C. § 72–201 to provide "sure and certain relief for injured workmen and their families...." Finally, I.C. § 72–803 grants the Commission the authority to "approve" claims for attorney fees.[2] Thus, it is apparent that the Commission has the authority to administer I.C. § 72–803, and to issue regulations *necessary* to bring about secure relief for injured workers and their families.[3]

 The Commission asserts that the regulation, issued pursuant to I.C. §§ 72–508 and 72–803, is reasonable in its design to protect the public welfare. Rhodes challenges the reasonableness of the Commission's interpretation of the scope of power conferred by § 72–803, complaining that the

regulation exceeds any reasonable extension of the power to "approve" attorney fees, and unreasonably transgresses separation of powers. This Court has ruled that the Commission has original and exclusive jurisdiction over issues concerning attorney fees in workers' compensation cases. *Brannon v. Pike*, 112 Idaho 938, 939, 737 P.2d 459, 460 (1987). However, this ruling must be balanced against the principle that the judicial department of the government is uniquely imbued with the power to regulate the practice of law. *Idaho State Bar Assoc. v. Idaho Pub. Util.*, 102 Idaho 672, 675, 637 P.2d 1168, 1171 (1981). Where the practice of law intersects with a social system such as the workers' compensation system, the judicial power does not merge, but remains plenary. Any authority exercised by the other departments of government that affects the practice of law must not conflict with judicial resolution.

The authority granted to the Commission under § 72–803, to "approve" attorney fees, does not conflict with the judicial penumbra. The regulation under challenge, promulgated to foster ease, utility, and predictability in the application of I.C. § 72–803, in turn does not overstep the legislative bounds of I.C. § 72–803, read in *pari materia* with the entire Workers' Compensation Act. *See Heese v. A & T Trucking*, 102 Idaho 598, 600, 635 P.2d 962, 964 (1981) (various provisions of Workers' Compensation Act must be read in *pari materia* ). The regulation is not a fee schedule. It is a framework establishing uniform grounds for fee approval. The language of I.C. § 72–803 contemplates that the Commission will monitor the appropriateness of fees on behalf of claimants, and therefore the regulation provides a reasonable interpretation of the power vested by I.C. § 72–803.

In this case, the operative word in I.C. § 72–803 is "approve."[4] Rhodes argues that

---

2. I.C. § 72–803 states that "[c]laims of attorneys and claims for medical services and for medicine and related benefits shall be subject to approval by the commission."

3. This Court has held that " '[e]very power expressly granted, or fairly to be implied from the language used, where *necessary* to enable the commission to exercise the powers expressly

granted should be afforded.' " *United States v. Utah Power & Light Co.*, 98 Idaho 665, 667, 570 P.2d 1353, 1355 (1977) (emphasis added). Am. Jur.2d, Public Utilities § 232 (1972).

4. This Court, in *Western Hospital Ass'n v. Industrial Accident Bd.*, 51 Idaho 334, 6 P.2d 845 (1931), defined the word "approve" as it appeared in a similar statute:

the word "approve" means simply that, *to approve*. It does not mean to "regulate." Given the broad empowerment provided by I.C. § 72–508, coupled with the purpose underlying the Workers' Compensation Act, i.e., to provide "sure and certain relief for injured workmen and their families," I.C. § 72–201, we cannot agree with Rhodes' contention. The absence of the word "regulate" in I.C. § 72–803, is not legally significant and does not exact a reading that the legislature intended to confine the Commission's regulatory authority. "The workers' compensation law is to be liberally construed with a view to effect its objects and promote justice." *Mayo v. Safeway Stores*, 93 Idaho 161, 166, 457 P.2d 400, 405 (1969). Accordingly, we hold that the word "approve" is sufficient to establish the proper delegation of the power to regulate attorney fees.

## II.

## CONSTITUTIONAL ISSUES

■ Rhodes argues that the disputed regulation infringes injured claimants' right to competent counsel to seek redress for their industrial injuries, in violation of the due process clause of the constitution, and interferes with attorneys' right to pursue their profession, in violation of the equal protection clause of the constitution. Administrative regulations are subject to the same principles of construction as are statutes. *Bingham Mem. Hosp. v. Idaho Dep't of Health & Welfare*, 112 Idaho 1094, 1096, 739 P.2d 393, 395 (1987); *Higginson v. Westergard*, 100 Idaho 687, 691, 604 P.2d 51, 55 (1979). Accordingly, when faced with a constitutional challenge, this Court makes every

presumption in favor of the constitutionality of the challenged regulation, and the burden of establishing unconstitutionality rests upon the challengers. *See Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990).

■ Rhodes has failed to show how the regulation violates the equal protection clause of the constitution of the United States or art. I, § 2 of the Idaho constitution. Because the challenged regulation creates no suspect or invidiously discriminatory classification and entangles no fundamental right, but involves economic and social welfare legislation, it must be tested under the restrained standard of equal protection review, the familiar rational basis test. *Heese*, 102 Idaho at 600, 635 P.2d at 964; *Jones v. State Bd. of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976). Under the rational basis test, the regulation must bear a rational relationship to a legitimate legislative purpose. *Heese*, 102 Idaho at 601, 635 P.2d at 965. The regulation withstands scrutiny under this test.

There is a rational relationship between the legitimate legislative purpose to foster sure and certain relief for injured workers and the attorney fee regulation. The limit imposed by the regulation furthers the purpose by making the cost of attorneys paid from new money less burdensome.

Similarly, Rhodes has not established that the regulation denies due process under the constitution of the United States or art. I, § 13 of the Idaho constitution. The regulation satisfies due process analysis under the same standard for the reasons already stated. Unless it can be shown that the regula-

"[T]o commend; be satisfied with." (Bouvier's Law Dictionary, 3d. Rev. at 223.) "To confirm, ratify, sanction or consent to some act or thing done by another." (1 Words & Phrases, 3d. ser., 545, citing *Board of Educ. of City of Hutchinson v. Reno Community High School*, 124 Kan. 175, 257 P. 957, 959 (1927).) "To sanction officially; to ratify; to confirm." (Words & Phrases, 2d. ser., 260, citing *Long v. Needham*, 37 Mont. 408, 96 P. 731, 733 (1908).) "To pronounce good; think or judge well of; admit the propriety or excellence of; be pleased with; commend; and as used in Pol.Code, § 17, providing that all contracts made by the state furnishing board must be

'approved' by the Governor or State Treasurer, means more than ministerial approval. They must exercise judicial discretion." (1 Words & Phrases, 475, citing *State v. Smith*, 23 Mont. 44, 57 P. 449 (1899).) "To regard or comment upon as worthy of acceptance, commendation or favorable attention; form or express a favorable judgment concerning; treat, receive or present with favor." (Funk & Wagnalls New Standard Dictionary.) *Western Hospital*, 51 Idaho at 343, 6 P.2d at 854. The *Western Hospital* court concluded that "[h]aving jurisdiction to approve or determine, the Board may reject." *Western Hospital*, 51 Idaho at 344, 6 P.2d at 855.

tory scheme makes legal representation entirely unavailable, evidencing the illegitimacy of the scheme, the scheme does not violate the due process right of a lawyer's prospective client to obtain legal representation. *United States Dep't of Labor v. Triplett,* 494 U.S. 715, 724, 110 S.Ct. 1428, 1433, 108 L.Ed.2d 701 (1990) (anecdotal evidence, in the form of conclusions by attorneys that a fee limitation will cause attorneys to leave a field of practice or will impact the quality of attorneys in an area of practice is blatantly insufficient to meet [the] burden of proof). Petitioners have not met this burden, and therefore, the attorney fee regulation does not violate due process.

Costs on appeal to the Commission.

BISTLINE and JOHNSON, JJ., and WALTERS, J. Pro Tem., concur.

TROUT, Justice, dissenting.

I must respectfully dissent from the opinion of the majority. I agree that the Industrial Commission (Commission) has authority to promulgate rules and regulations designed to effectuate the purpose of the Worker's Compensation Act (Act); that is, rules and regulations which are designed to provide sure and certain relief for injured workers and their families. I.C. §§ 72–201, 72–508. However, I do not agree that the attorney fee regulation is reasonably related to the purpose of the Act or that the adoption of the attorney fee regulation is a reasonable exercise of the Commission's rulemaking authority granted by the Act.

The Commission has interpreted I.C. § 72–803 as vesting it with the authority to adopt the regulation at issue. Section 72–803, in pertinent part, provides that "[c]laims of attorneys ... shall be subject to approval by the commission."

Pursuant to I.C. § 72–803, the Commission has adopted regulations providing for a maximum contingency fee to be charged by a workers' compensation claimant's attorney. The specific regulation at issue provides:

4. **Maximum attorney fee to be charged by a claimant's counsel.** After the effective date of this regulation, any contingent fee agreement between counsel and a claimant in a workers' compensation case shall provide that the amount of attorney fees will not exceed 25% of any new money received by the claimant, whether such new money is acquired pursuant to a Lump Sum Settlement Agreement, other Agreement, Mediation, or an award of the Commission.

 a. Provided, however, that after hearing by the Commission and upon its own motion, the Commission may award attorney fees up to 30% of new money awarded.

 b. In cases where a claimant is deemed totally and permanently disabled, attorney fees may be deducted from no more than 500 weeks of workers' compensation benefits.

This Court has held that where an administrative agency has authority to promulgate rules, those rules "are invalid which do not carry into effect the legislature's intent as revealed by the existing statutory law, and which are not reasonably related to the purposes of the enabling legislation." *Holly Care Center v. State, Dept. of Employment,* 110 Idaho 76, 78, 714 P.2d 45, 47 (1986). Rules which are "merely arbitrary or capricious" will not be upheld. *Id.,* at 78, 714 P.2d at 47.

This Court's inquiry should be whether the regulation in question is consonant with the legislature's intent as expressed in the enabling statute. *Holly Care,* 110 Idaho at 78, 714 P.2d at 47. *See also Idaho County Nursing Home v. Idaho Dept. of Health and Welfare,* 120 Idaho 933, 937, 821 P.2d 988, 992 (1991) ("[R]egulations of administrative agencies are generally upheld if they are reasonably directed to the accomplishment of the purposes of the statutes under which they are established."); *Hayman v. State, Dept. of Health and Welfare,* 100 Idaho 710, 714, 604 P.2d 724, 728 (1979) (reversing a district court finding that a regulation was unreasonable and capricious because the regulation was "consistent with the pertinent statutes").

I do not believe that the attorney fee regulation satisfies this inquiry. First, based upon the plain, obvious and rational language of the statute, *Sweitzer v. Dean,* 118 Idaho

568, 572, 798 P.2d 27, 31 (1990), it is my opinion that the legislature adopted Section 72–803 in order to empower the Commission to review attorney fees at the end of a case. Section 72–803 says nothing about mandating an appropriate attorney fee prior to the commencement of the attorney-client relationship nor does it vest the Commission with the authority to mandate a flat recovery rate for an attorney in advance of any work performed by the attorney and without any consideration given to the circumstances of the case or the time and effort involved. *See Clark v. Sage,* 102 Idaho 261, 629 P.2d 657 (1981) (in determining a reasonable contingency fee, the Commission must engage in a balancing process weighing a variety of factors[5]). The attorney fee regulation at issue is not consonant with the legislative intent as reflected by the language of I.C. § 72–803.

Second, I do not believe the attorney fee regulation will effectuate the legislature's intent for the Act, that is of "providing sure and certain relief for injured workmen and their families...." I.C. § 72–201. Imposing an artificial ceiling upon an attorney's recovery without reference to some guidelines, such as the factors enumerated in *Clark,* will have a chilling effect on the ability of claimants to obtain qualified representation. The Court articulated this fear in a previous worker's compensation case involving attorney fees:

> It is our belief that this legislative intention to insure adequate representation and claim prosecution requires the award of *reasonable* attorney's fees. Were the fees of attorneys to be kept artificially low, i.e., below market value on a per hour basis, the result would be a migration of legal talent away from this crucial area and a chilling effect on the ability of claimants to obtain representation. As the Supreme Court of New Mexico stated in *Herndon v. Albuquerque Public Schools,* 92 N.M. 287, 288, 587 P.2d 434, 435 (1978):

> > If attorneys are denied fees for work prosecuted on behalf of an injured workman, there would be a chilling effect upon the ability of an injured party to obtain adequate representation. Through their insurance companies, employers regularly obtain exceptional and well-qualified counsel to defend them in such cases. It is imperative that courts foster and protect the ability of an injured workman to obtain counsel of his choice. We must avoid a policy or a practice which would discourage [such] representation....

*Hogaboom v. Economy Mattress,* 107 Idaho 13, 17, 684 P.2d 990, 994 (1984). (emphasis in original).

The reasoning used in *Hogaboom* and *Herndon* applies to the present case. A predetermined recovery, established without regard for the nature of the case or the anticipated time required to resolve the case, will work a great injustice upon Idaho workers entitled to qualified representation in their compensation claims. Attorneys will now be reluctant to accept small cases which often involve an initial denial of benefits. Similarly, attorneys will be leery of accepting larger cases involving complex legal issues since these often involve the time and expense of a lengthy hearing and an appeal. These consequences will undermine, not foster, the legislative policy of providing sure and certain relief to injured workers.

Third, the subject regulations were adopted in the face of overwhelming opposition. Without belaboring the point, the testimony and comments concerning the proposed regulations were virtually unanimous in their opposition to the adoption of the proposed regulations. It is my opinion that the Commission did not "consider fully all written and oral submissions respecting the proposed rule" as required by I.C. § 67–5203(3). The Commission's failure to consider these submissions further convinces me

---

**5.** The following factors were enumerated by the Court: (1) the anticipated time and labor required to perform the legal services properly; (2) the novelty and difficulty of the legal issues involved in the matter; (3) the fees customarily charged for similar legal services; (4) the possible total recovery if successful; (5) the time limitations imposed by the client or circumstances of the case; (6) the nature and length of the attorney-client relationship; (7) the experience, skill and reputation of the attorney; (8) the ability of the client to pay for the legal services to be rendered; and (9) the risk of no recovery. 102 Idaho at 265–66, 629 P.2d at 661–62.

that the Commission's actions were arbitrary and capricious.

Finally, I do not believe that the additional five percent recovery, which the Commission may award on its own motion, will in any way mitigate the unacceptable effect of these regulations. The Commission has not identified any guidelines by which it will, *sua sponte,* award this additional amount. I cannot help but think that in the absence of such guidelines, this provision, too, will produce arbitrary and inequitable results.

Based on the foregoing, I would grant the petition for a writ of prohibition.