821 P.2d 988

**IDAHO COUNTY NURSING HOME,**
Petitioner–Appellant,

v.

**IDAHO DEPARTMENT OF HEALTH
AND WELFARE, Respondent.**

No. 18020.

Supreme Court of Idaho,
Boise, February 1991 Term.

Dec. 10, 1991.

Lojek & Gabbert, Chartered, Boise, for petitioner-appellant. Donald W. Lojek, argued.

Larry J. EchoHawk, Atty. Gen., Bradford D. Goodsell, Deputy Atty. Gen. (argued), Boise, for respondent.

ON REHEARING 1991 OPINION NO. 95 FILED JULY 8, 1991 IS HEREBY WITHDRAWN AND THIS OPINION SUBSTITUTED THEREFOR

BOYLE, Justice.

In this appeal from an administrative proceeding we are called upon to determine whether I.C. § 56–110 and 16 IDAPA 03.-10254.07(f) properly implement the objectives of the Medicaid program to reimburse efficiently operated long-term health care facilities.

## I.

### Reimbursement Process

Under the Medicaid program the federal and state governments share the cost of nursing home care for the elderly. A state is not required to join the program, however, if a state chooses to participate it must submit a plan to the Secretary of Health and Human Services for approval. The state plan will not be approved under 42 U.S.C. § 1396a(b) unless it fulfills the conditions specified in 42 U.S.C. § 1396a(a). Section 1396a(a)(13)(A) requires that the state plan provide for payment to the skilled nursing facility under rates

> [w]hich the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations and quality and safety standards.

This particular code section was adopted by Congress as the Boren Amendment and codified at 42 U.S.C. § 1396a(a)(13)(A) to permit and encourage "states to develop simpler, more efficient ways of paying for nursing home care, including budget-based and negotiated rates." *Nebraska Health Care Ass'n, Inc. v. Dunning*, 575 F.Supp. 176 (D.Neb.1983) (*citing* 126 Cong.Rec. S8927 (daily ed. June 30, 1980)).

■ Legislative history demonstrates that Congress intended that states set their own reimbursement rates without stifling and expensive federal oversight of the methodology used. *Coalition of Michigan Nursing Homes, Inc. v. Dempsey*, 537 F.Supp. 451, 459 (E.D.Mich.1982) (*citing* 42 C.F.R. § 447.252(a)(1) and (2), § 447.255(a), (b)(2)).

Title 56, chapter 1 of the Idaho Code governs the nursing home cost reimbursement system in Idaho. The Idaho Department of Health and Welfare implemented the plan by adopting those regulations set forth in the Idaho Department of Health and Welfare's Provider Reimbursement Manual, 16 IDAPA 03.10000.

Individual medical care facilities[1] must contract with the Idaho Department of Health and Welfare (hereafter "Department"). Under the facility reimbursement program, interim payments are made based upon the facility's most recent audit or cost report which is projected forward. At the end of the fiscal year, the facility files a cost report which itemizes and lists all of its costs of doing business and makes a claim with the Department for reimbursement of allowable costs. The cost report is examined by the Bureau of Audit of the Department which issues a draft audit to the facility setting forth those costs which are considered allowable and those which are not allowed. All of the costs that are allowed are then aggregated and divided by the number of patient days that the facility provided. The Department then applies a "percentile cap" to this patient per diem amount to determine the amount to which the facility is entitled to be paid. Under the "percentile cap" concept, all similar nursing care facilities are analyzed by a computer and ranked on the basis of patient per diem costs. The Department then determines where the eightieth percentile falls, and if a facility's per diem costs exceed the cap those costs are disallowed. I.C. § 56–110(a).

The facility is allowed to respond prior to the Department finalizing the audit, and a facility may appeal the final audit report if it disagrees with a certain disallowance. In order to be reimbursed for costs above the percentile cap, a provider must demonstrate that "his facility was operated efficiently during the cost reporting period and that the costs incurred in excess of the percentile cap were beyond his control." 16 IDAPA 3.10254.07(f). An administrative hearing officer hears the appeal and recommends a decision to the director of the Department. A facility may file exceptions to that decision and request a post-hearing conference with the Department.

In the final decision, the director may affirm or reject the hearing officer's recommendation in whole or in part. I.C. § 56–133.

## II.

### Statement of Facts

Idaho County Nursing Home (hereafter "Idaho Nursing") is a long-term health care facility in Grangeville, Idaho, and a participant in the Medicaid program. In the audit of the costs incurred by the Idaho County Nursing Home, the auditors found that out of a total of $541,714.00 in costs, $524,011.00 were allowed as reasonable under the rules.[2] The allowable amount divided by the number of patient days incurred during the period yields a per diem patient cost of $43.50. The Department ranked all of the per diem costs of skilled nursing facilities in the state to determine the percentile ranking. Based upon this determination Idaho Nursing was approximately $6.50 per diem over the eightieth percentile cap, and therefore, $47,140.65 in costs were disallowed by the Department as a result of application of the percentile cap.

An administrative hearing was held and the hearing officer's recommended decision and order of July 14, 1986 was subsequently adopted as the Department's Final Decision and Order on February 12, 1987. Idaho Nursing appealed this decision to the district court. After a hearing the district court "sustained the validity of the percentile cap established by I.C. § 56–110, [and] upheld the Department's regulation 16 IDAPA 03.10254.07(f)." However, the district court determined that the hearing officer had inappropriately applied the regulation in determining whether Idaho Nursing had met the presumption required by the regulation.

The district court noted that the hearing officer had not made a specific finding of

---

1. The word "facility" has its origin in the statute. *See* definition of "facility" in I.C. § 56–101(6). The word "provider" has its origin in the Department of Health and Welfare's regulations. Accordingly, both words are used interchangeably herein.

2. The district court considered the disallowed costs and determined that the department inappropriately disallowed some of those costs. However, whether or not the disallowed costs were appropriately determined is not before us in this appeal.

inefficiency or unreasonableness. Furthermore, the district court reviewed the record and concluded that the evidence did not support the hearing officer's finding that Idaho Nursing's employee retirement program costs were beyond its control. Two experts testified at the hearing that except for the costs incurred for employee benefits, Idaho Nursing's overall costs compared favorably with other similarly situated nursing facilities. The hearing officer determined that employee benefits costs were reasonably within the control of the nursing facility. However, the district court noted that a part of the employee benefits costs included the costs incurred for enrollment in Idaho's public retirement system (PERSI) and that all Idaho county employees would have to withdraw at a cost of almost $500,000 in order to discontinue enrollment in the PERSI plan. The district court held that the hearing officer's finding that the costs incurred by Idaho Nursing for the PERSI employee benefits was not beyond the control of the facility was erroneous. The district court remanded the proceedings to the Department to redetermine whether Idaho Nursing was efficiently operated and whether it was entitled to reimbursement of those costs exceeding the percentile cap. On remand, the Department determined that because the remaining employee benefit costs for health and dental insurance were within the control of the provider, and because the cost of these programs exceeded the amount by which Idaho Nursing's total costs exceeded the percentile cap, the nursing facility was inefficient. The Department concluded that Idaho Nursing was not entitled to reimbursement of costs exceeding the percentile cap, and on appeal the district court affirmed the Department's decision.

On appeal to this Court Idaho Nursing challenges the validity of the percentile cap, the creation of a rebuttable presumption under I.C. § 56–110, and the requirement of "control" imposed by 16 IDAPA 03–10254.07(f). Furthermore, Idaho Nursing claims that the manner in which the Department administers the regulations, results in the presumption being irrebuttable.

## III.

### Percentile Cap

■ Congress left to the individual states to determine what constitutes an efficiently operated facility. Congress gave the states a significant amount of flexibility so they could reduce the costs of administering Medicaid programs and encourage efficiency on the part of facility operators, while maintaining the secretary's final authority to disapprove state plans. *Nebraska Health Care Ass'n, Inc. v. Dunning*, 575 F.Supp. 176 (D.Neb.1983).

In 1981, the Idaho legislature amended Title 56 of the Idaho Code, adding provisions which included the prospective rate and payment mechanisms for the Medicaid Reimbursement Program provided by I.C. §§ 56–103 and 56–110. Idaho Code § 56–103 generally provides four different percentile caps depending on the range of non-property costs within each class. Idaho is not alone in implementing a reimbursement program utilizing a percentile cap, and other jurisdictions have upheld percentile caps. In *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 388 (5th Cir.1980), the Fifth Circuit Court of Appeals refused to strike down the use of reimbursement rates based on the sixtieth percentile. In *Country Club Home, Inc. v. Harder*, 228 Kan. 756, 620 P.2d 1140 (1980), *reh'g denied, mod.* 228 Kan. 802, 623 P.2d 505 (1981), the Kansas Supreme Court upheld a ceiling rate of the seventy-fifth percentile on the basis that it does not result in an unreasonable rate of reimbursement and is not contrary to the federal law and regulations. In *Colorado Health Care v. Colorado Dep't of Social Servs.*, 842 F.2d 1158 (10th Cir.1988), the Tenth Circuit Court of Appeals held that an amendment of the state Medicaid plan which removed the incentive allowance and provided reimbursement limited by a ceiling did not disqualify the payment plan from federal compliance; and furthermore, that states are not required to reimburse providers for costs they actually or even reasonably incur. In

Michigan and Mississippi participating long term care facilities are reimbursed their actual allowable costs up to the eightieth percentile of variable costs for all providers in the facility's class. *See Mississippi Hosp. Ass'n, Inc. v. Heckler,* 701 F.2d 511, 516 (5th Cir.1983); *Coalition of Michigan Nursing Homes, Inc. v. Dempsey,* 537 F.Supp. 451, 453 (E.D.Mich.1982).

Use of a percentile cap has been held to be an effective tool in promoting efficiency and economy in the Medicaid program of providing long term care to nursing home residents. One court has observed, "Since the rates are prospective, every (long term care facility) has an opportunity to recover its full costs as long as it can bring them below the eighty percent ceiling established" by looking at the previous year's cost reports and audits. *Mississippi Hosp. Ass'n, Inc. v. Heckler,* 701 F.2d 511, 517 (5th Cir.1983). It has also been held that state Medicaid agencies must make objective, principled decisions with regard to what rates are reasonable and adequate. *Thomas v. Johnston,* 557 F.Supp. 879, 914 (W.D.Tex.1983).

In light of the federal and state decisions addressing the validity of a percentile cap, we hold the use of the percentile cap as enacted in I.C. § 56–103 to determine reimbursement is in compliance and conformity with the controlling federal statutes and is valid.

## IV.

### Rebuttable Presumption of I.C. § 56–110(a)

The rebuttable presumption provided in Idaho Code § 56–110(a) states in pertinent part:

A rebuttable presumption exists with respect to costs above the basic payment that a facility incurring such costs is not economically and efficiently operated, taking into account economic conditions and trends during the period covered by such costs, and that such costs are not reasonable.

Appellant questions whether the statutory presumption found in I.C. § 56–110(a) can realistically be rebutted under 16 IDA-PA 3.10254.07(f) so that reimbursement for those costs can ever be allowed. 16 IDA-PA 3.10254.07(f) provides that:

Reimbursement of cost in this cost center will be limited to the percentile cap unless the Provider can demonstrate to the Department of Health and Welfare that his facility was operated efficiently during the cost reporting period and that the costs incurred in excess of the percentile cap were beyond his control. In such case, costs in excess of the cap will be allowed to the extent that they are justified by this process.

Appellant contends that this regulation imposes a significant, if not impossible, burden on the facility and improperly narrows the intent and scope of I.C. § 56–110.

When a conflict exists between a statute and a regulation, the regulation must be set aside to the extent of the conflict. *Rawson v. Idaho State Bd. of Cosmetology,* 107 Idaho 1037, 695 P.2d 422 (Ct.App.1985). However, it is well established that regulations of administrative agencies are generally upheld if they are reasonably directed to the accomplishment of the purposes of the statutes under which they are established. *See Hayman v. State Dep't of Health & Welfare,* 100 Idaho 710, 604 P.2d 724 (1979).

The Idaho legislature enacted I.C. § 56–135 for the purpose of directing the Department of Health and Welfare to promulgate, amend or rescind administrative rules as are necessary to carry out the purpose of title 56, chapter 1. Idaho Code § 56–130 provides in pertinent part:

[T]he legislative auditor shall develop and transmit to the director recommendations for promulgation by rule ... to include ... [u]niform definitions, standards and procedures for adjustments to prospective rates established by the director for facilities ... which take into account ... [u]nforeseen increases or decreases in cost categories ... which are outside the control of any individual facility.

Pursuant to these code sections, the Department promulgated 16 IDAPA 3.10254.-

07(f) which provides that costs incurred by the facility in excess of the percentile cap will be disallowed unless the facility can establish that such costs were beyond its control.

The district court correctly noted that I.C. § 56–110 requires consideration of economic conditions and trends in determining the proper reimbursement and that the express language of 16 IDAPA 3.10254.07(f) does not require absolute impossibility. The application of the regulation by the Department may result in the presumption being irrebuttable, however, on its face the regulation is valid and we find that it reasonably encourages efficiency while adequately reimbursing facilities.

Therefore, having held the regulation to be valid, we now address the manner in which the regulation should be applied to implement the legislative intent and determine whether it was properly applied in this case. In *Bongiovi v. Jamison*, 110 Idaho 734, 738, 718 P.2d 1172, 1176 (1986), we addressed the common law presumption and held that a presumption under IRE 301 no longer exists once sufficient evidence is presented. Rule 301 states:

> In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Idaho Rule of Evidence 1102 provides that statutory provisions and rules governing the admissibility of evidence, to the extent they are evidentiary in nature and to the extent they are in conflict with applicable rules of the Idaho Rules of Evidence, are of no force or effect. However, I.R.E. 301 expressly states that a presumption applies unless "otherwise provided for by statute." The committee comment to Rule 301 states:

> Where the statute creating the presumption expressly provides the force that the presumption shall carry, e.g., to shift the burden of proof, or provides the weight of evidence required to rebut the presumption, it is intended that the statute shall govern. *See, e.g.* I.C. § 7–1119. (C301 p. 3).

Idaho Code § 56–110(a), dealing with the rebuttable presumption of efficient operation, does not state how the presumption is to be applied, and therefore, the rule stated in *Bongiovi* applies.

■ The burden is on the facility to demonstrate its right to reimbursement. *See Bingham Memorial Hosp. v. Idaho Dep't of Health & Welfare*, 112 Idaho 1094, 739 P.2d 393 (1987). However, once the facility has submitted substantial evidence that it is efficiently operated and has incurred costs beyond its control, the presumption contained in I.C. § 56–110(a)(6) disappears, *Bongiovi, supra*, and the facility has made a *prima facie* case that the costs are reasonable.

The appellant claims that the manner in which the Department of Health and Welfare interprets and administers 16 IDAPA 3.10254.07(f) effectively makes the presumption intended by the legislature in I.C. § 56–110(a) an irrebuttable presumption. Because all of a facility's costs are aggregated in order to determine the patient per diem cost upon which the percentile cap is based, the appellant argues that it is impossible to demonstrate which particular cost item or items caused the per diem amount to exceed the percentile cap. Since appellant claims it is impossible to determine which cost items were incurred in excess of the percentile cap, it argues that it is impossible to meet the requirements of the regulation.

The facts of this case demonstrate the dilemma facing nursing home operators when attempting to justify costs in excess of the percentile cap. Idaho Nursing proved that its employee retirement (PERSI) costs were beyond its control, however, the Department concluded that it was the other non-retirement employee benefits which caused the per diem patient day cost to exceed the percentile cap and therefore, it concluded that these expenses caused the facility to be inefficiently operated. Appel-

lant argues that it is impossible to determine whether it was the retirement benefits (PERSI) costs, the health insurance benefit costs, or some other cost item, or a combination of all of the factors which caused the facility to exceed the eightieth percentile cap. Although appellant's argument is persuasive, we are of the opinion that the statutory presumption is not impossible to meet and rebut.

■ At oral argument counsel for the Department stated that it was the Department's position that in order to rebut the presumption the facility only needed to demonstrate that it incurred costs beyond its control. We agree. The testimony and evidence presented at the hearing demonstrated that Idaho Nursing's PERSI costs exceeded the costs of other private nursing homes, and that its PERSI costs were beyond its control. Therefore, under *Bongiovi* the presumption has disappeared, and the Idaho Nursing Home has made out a *prima facie* case. See *Bongiovi v. Jamison*, 110 Idaho 734, 739, 718 P.2d 1172, 1177 (1986), for the evidentiary process involving the presumption. The regulation provides that once the presumption has been met then the facility is only required to demonstrate that it was operated efficiently during the cost reporting period. The fact finder must then determine whether the facility was operated efficiently and the extent to which the costs exceeding the percentile cap were beyond its control.

The Department may not simply rely on the fact that the facility exceeded the percentile cap to prove inefficiency. To do so would be to reinstate the presumption and make it irrebuttable as appellant argues. Once the presumption is rebutted there no longer remains an assumption that the provider's facility is inefficiently operated and the Department has the same evidentiary burden as the facility. In that circumstance the Department must then prove that the facility is inefficiently operated in order to deny payments for those costs that exceed the percentile cap.

Efficiency denotes prudent, reasonable and responsible management. Efficiency has been defined as the capacity to produce desired results with the minimum expenditure of energy, time, money or material. *Webster's Third New International Dictionary*, 725 (1969). However, merely because one nursing facility has higher costs than another facility does not necessarily mean that it is operated less efficiently than another. The reasons for higher costs may be explained and rebutted as provided by the legislative intent of I.C. § 56–110(a). If there is a reasonable and prudent reason for the higher costs then it can reasonably be concluded that the facility is efficiently operated. A determination of these issues will be resolved on a case-by-case basis by the hearing officer acting as a trier of fact.

■ In this case the district court on appeal from the agency proceedings determined that the evidence did not support the finding that the costs expended by Idaho Nursing for its employee retirement benefits (PERSI) could reasonably be controlled. The district court noted that it would cost Idaho Nursing almost $500,000 to withdraw from the PERSI program. We agree. The finding of the Department and the hearing officer on this particular point is erroneous and is reversed.

A review of the record demonstrates that Idaho Nursing rebutted the presumption by proving that some of the costs incurred in excess of the percentile cap were beyond its control and therefore the presumption no longer existed to prove that it was inefficiently operated. Therefore, we must now determine, based on a review of the entire record, whether the balance of the findings are supported by probative, reliable and substantial evidence and are not clearly erroneous. I.C. § 67–5215(g)(5).

In the first appeal the district court noted that the hearing officer did not make any specific findings of inefficiency. At the hearing several experts testified that the facility was operated efficiently. One expert testified that "it appears that you are doing prudent and cost effective management on all areas where you have control." The only testimony presented by the Department that the nursing facility was inefficiently operated was the testimony of its experts that the facility was inefficient simply because its per diem patient

costs exceeded the percentile cap. In effect, in making a finding based on this evidence the Department merely restated the statutory presumption and concluded that because the non-retirement employee benefit costs were not beyond the control of the provider, and because those costs exceeded the percentile cap, Idaho Nursing was inefficiently operated. However, this finding merely restates the statutory presumption and is erroneous. Once the presumption has been rebutted it cannot be used to bar reimbursement to the facility. Under these circumstances the findings of the Department must be based on some evidence in addition to the presumption to show that the facility was inefficiently operated. Once a facility has rebutted the presumption by presenting evidence that the costs in excess of the percentile cap are beyond its control, the hearing officer must make a finding based on the evidence without reliance on the presumption.

Before a reviewing court can affirm an administrative agency's decision it must determine whether the findings are not clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. I.C. § 67–5215(g)(5). Therefore, in order for the Department to prevail on appeal, some reliable, probative and substantial evidence in support of its position that the facility was inefficiently operated must appear in the record. The Department may not simply restate and rely upon the presumption, i.e. that the facility's per diem costs exceeded the percentile cap, to prove that the facility is inefficient. If the record does not support the agency's decision, it is well established that we must remand the case for further proceedings. *Love v. Board of County Commr's,* 105 Idaho 558, 671 P.2d 471 (1983); I.C. § 67–5215(g).

In this case we have reviewed the entire record. The testimony and evidence presented at the hearing established that Idaho Nursing's costs generally compared favorably with other similarly operated nursing facilities. The only cost item that appeared to be substantially higher was employee benefit costs, including health and dental insurance and PERSI costs. However, the testimony and evidence at the hearing demonstrated that the facility was operated in an efficient manner and there was no finding that the employee benefits were unreasonable. Nor was there a finding that the employee benefits caused the nursing facility to be inefficient or uneconomically operated.

In this case, Idaho Nursing presented evidence that it incurred costs beyond its control that caused it to exceed the percentile cap. Since the statutory presumption was rebutted, it was simply a factual and evidentiary matter of determining whether or not Idaho Nursing was efficiently operated. The Department attempted to prove that Idaho Nursing was inefficient simply because it had costs that exceed the percentile cap. Beyond this the record does not demonstrate or establish that Idaho Nursing was inefficient. Because the statutory presumption was rebutted, the presumption cannot be the basis of proving the facility is inefficient. Therefore, we reverse the decision of the district court and remand for further proceedings to determine whether Idaho Nursing was efficiently operated and to what extent its costs above the percentile cap are justified.

Costs to appellant. No fees on appeal.

BAKES, C.J., and BISTLINE, JOHNSON and McDEVITT, JJ., concur.