920 P.2d 62

IDAHO COUNTY and its Commissioners Patrick Long, Harry Owens and George Enneking, d/b/a Idaho County Nursing Home, Petitioners–Appellants,

v.

IDAHO DEPARTMENT OF HEALTH AND WELFARE, Respondent.

No. 21540.

Supreme Court of Idaho,
Coeur d'Alene, October 1995 Term.

May 22, 1996.

Rehearing Denied Aug. 8, 1996.

Lojek & Strother Chartered, Boise, for appellant. Donald W. Lojek argued.

Alan G. Lance, Attorney General; Marcy J. Spilker, Deputy Attorney General, Boise, argued, for respondent.

SILAK, Justice.

This is an appeal from the district court's affirmance of an administrative decision to deny Medicaid reimbursement to the appellant for costs of services to Medicaid patients. Appellant Idaho County Nursing Home (Idaho Nursing) seeks reversal of the administrative decision and that the respondent Idaho Department of Health and Welfare (the Department) be directed to reimburse all of the disallowed costs for the years 1985 through 1989. We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Idaho Nursing is a free standing, county owned and operated long-term health care facility located in Grangeville, Idaho. Idaho Nursing is licensed and certified for participation in the Medicaid reimbursement program. Under the Medicaid program, Idaho Nursing provides long term nursing care to the indigent elderly and is reimbursed pursuant to I.C. § 56–101, *et seq.* Under this program the federal and state governments share the cost of the nursing home care.

The name "cost reimbursement system" has been given to the Idaho methodology for reimbursement to providers who participate in the Medicaid program. Each state participating in the Medicaid system is free to choose among different methods of reimbursement and Idaho, pursuant to I.C. § 56–101 *et seq.*, through the Department, has opted for a cost-related system. The purpose of this system is to reimburse costs as long as they are "reasonable, necessary, ordinary and related to patient care." IDAPA 16.03.100.01. For a detailed history of how the Medicaid reimbursement process works in Idaho, see *Idaho County Nursing Home v. Department of Health and Welfare,* 120 Idaho 933, 934–35, 821 P.2d 988, 989–90 (1991) (*ICNH I*).

This matter began with Idaho Nursing's appeal of its 1985 audit disallowing Medicaid cost reimbursements. Similar audit appeals occurred for the years 1986, 1987, 1988 and 1989. Idaho Nursing and the Department agreed to consolidate these appeals for all five years. An administrative hearing was conducted before a hearing officer beginning in November 1992. On April 16, 1993, the hearing officer issued her findings of fact, conclusions of law and proposed order recommending that the disallowances found in the audits for 1985–1989 be followed except for the Medicaid portion of PERSI costs. The hearing officer found that Idaho Nursing's employee benefits significantly exceeded the employee benefits of comparable facilities, and that while attempting to achieve a high quality of care is an admirable goal, the Boren Amendment, 42 U.S.C. § 1396a(a)(13)(A), establishes that facilities are to be reimbursed only to the extent necessary to achieve minimum standards of care. Therefore, these costs were found not to be beyond Idaho Nursing's control. However, the hearing officer found the PERSI costs to be beyond the control of Idaho Nursing based upon this Court's decision in *ICNH I*, which involved Idaho Nursing's appeal of its 1984 audit. The director of the Department affirmed the hearing officer's decision as the final decision and order. Thereafter, Idaho Nursing filed a petition for judicial review of final agency action in the district court. Following oral argument, the district court issued its memorandum opinion upholding the hearing officer's decision. Idaho Nursing appeals, claiming that the hearing officer's decision is clearly erroneous, and that the testimony and written report of the Department's expert witness were inadmissible.

## II.

## ANALYSIS

### A. STANDARD OF REVIEW.

██ In an appeal from an administrative agency decision, this Court reviews the agency decision independently of the district court's appellate decision. *Viveros v. Idaho Dep't. of Health & Welfare*, 126 Idaho 714,

717, 889 P.2d 1104, 1107 (1995); *Chambers v. Kootenai County Bd. of Comm'rs.*, 125 Idaho 115, 116, 867 P.2d 989, 990 (1994); *Hardy v. Higginson*, 123 Idaho 485, 488, 849 P.2d 946, 949 (1993). A review of an agency decision is limited to the record on appeal, and this Court may not substitute its judgment for that of the hearing officer on questions of fact. *Viveros v. Idaho Dep't. of Health & Welfare*, 126 Idaho at 717, 889 P.2d at 1107.

██ The law governing this appeal is the former I.C. § 67–5215(g). Under this section, we can reverse or modify an agency decision only in limited circumstances such as when the agency's decision is affected by error of law, is clearly erroneous in view of the whole record, or is found to be arbitrary and capricious. *Hardy v. Higginson*, 123 Idaho at 488, 849 P.2d at 949. For the reviewing court to uphold the agency's decision under the "clearly erroneous" standard it must conclude that the record contains some reliable, probative, and substantial evidence in support of the agency's position. *Dovel v. Dobson*, 122 Idaho 59, 62, 831 P.2d 527, 530 (1992).

### B. THE ADMINISTRATIVE DECISION OF THE HEARING OFFICER WAS NOT CLEARLY ERRONEOUS IN VIEW OF THE RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE ON THE WHOLE RECORD.

██ In *ICNH I*, this Court held that the burden of proving that the facility is entitled to Medicaid reimbursement is on the facility. *ICNH I*, 120 Idaho at 938, 821 P.2d at 993. By presenting proof of its costs, the facility initially fulfills this burden. At this point, I.C. § 56–110(a) creates a rebuttable presumption that costs over the percentile cap determined according to I.C. § 56–103 indicate that a nursing home is not being efficiently operated and its costs are not reasonable. The presumption disappears if the facility shows that some costs were beyond the facility's control.

In the present case, the hearing officer correctly found that Idaho Nursing had successfully rebutted the presumption. The employee benefit package for Idaho Nursing

comprises the costs at issue here, *i.e.*, PERSI costs and non-PERSI costs. The hearing officer determined, pursuant to our prior decision in *ICNH I*, that the PERSI costs are beyond Idaho Nursing's control because it would be cost prohibitive (approximately $500,000) for Idaho Nursing to withdraw from the PERSI program. While we do not know if it is the PERSI costs alone that push Idaho Nursing's costs above the percentile cap, or whether it is a combination of PERSI and non-PERSI costs, this is irrelevant to our inquiry as to whether Idaho Nursing has rebutted the presumption. As the Court held in *ICNH I*, as long as *some* of the costs above the percentile cap are proven to be beyond the facility's control, the presumption found in I.C. § 56–110(a) has been rebutted. *ICNH I*, 120 Idaho at 939, 821 P.2d at 994. Thus, because Idaho Nursing has shown that the PERSI costs are beyond its control, the presumption has disappeared.

■ Once the presumption disappears, factual questions remain whether the facility was operated efficiently during the cost reporting period, and whether its costs in excess of the percentile cap were reasonable. There is merely no presumption of inefficiency or unreasonable costs. *ICNH I*, 120 Idaho at 939, 821 P.2d at 994. *ICNH I* stated that the Department itself had a burden of proving that the facility is inefficiently operated, *once the presumption had been rebutted. Id.* To further clarify this statement, when a reviewing court reviews an agency's decision under the "clearly erroneous" standard the court must conclude that the record contains some reliable, probative, and substantial evidence in support of the agency's position. *Dovel v. Dobson*, 122 Idaho at 62, 831 P.2d at 530. Thus, in a Medicaid reimbursement proceeding such as this, the burden of proving entitlement to reimbursement remains at all times on the facility. When the Department contests reimbursement it must come forward in the administrative proceeding and assure that the record contains some reliable, probative, and substantial evidence that will be persuasive to the administrative fact finder and that will also meet the "clearly erroneous" standard of the reviewing court.

■ We hold that the reliable, probative and substantial evidence on the whole record establishes that the hearing officer was not clearly erroneous in concluding that Idaho Nursing failed to prove that it was operated efficiently. This Court has held that the word "efficiency" indicates "prudent, reasonable and responsible management," and that "efficiency has been defined as the capacity to produce desired results with the minimum expenditure of energy, time, money or material." *ICNH I*, 120 Idaho at 939, 821 P.2d at 994.

The witnesses in this case, including Idaho Nursing's, were almost unanimous in their testimony that Idaho Nursing's employee benefits significantly and clearly exceeded the employee benefits of comparable nursing homes. In attempting to show that it was efficiently operated during the period in question, Idaho Nursing presented testimony in support of its argument that its costs as a whole were unavoidable because it sought to achieve a maximum quality of care, rather than the minimum qualities set by state and federal law. Pursuant to the federal Boren Amendment, nursing homes are not entitled to be paid at rates expended to provide care which exceeds minimum standards. That amendment provides that a state plan needs to pay skilled nursing facilities under rates which are:

> Reasonable and adequate to meet the costs which *must* be incurred by efficiently and economically operated facilities *in order to provide care and services in conformity with applicable State and Federal laws, regulations and quality and safety standards.*

42 U.S.C. § 1396a(a)(13)(A) (Emphasis added).

The Department, on the other hand, introduced evidence that Idaho Nursing was inefficiently operated. The Department produced an expert witness, Dr. Robert Evans, who, in addition to testifying at the hearing, prepared a lengthy written report which was admitted into evidence. After being properly qualified as an expert witness (see below, Part II. C.), Dr. Evans testified that he found no unusual labor conditions or labor market for Idaho Nursing which might have caused unavoidably high costs for labor. He testified that there was a low turnover rate at

Idaho Nursing which suggested some inefficiency because generally unskilled labor work in nursing homes. A low turnover rate suggests that employees turn the jobs into career jobs because of higher salaries or benefit packages. Dr. Evans concluded that Idaho Nursing was purchasing services at above market rates. Since employee benefits are a percentage of salary, as wages drop, benefits drop. It was Dr. Evans' opinion that it is a management decision to set wages and benefits. He also opined that Idaho Nursing provided a good quality of services, but relied on high compensation packages to keep employees. Dr. Evans believed that this was a substitute for good management and was inefficient because Idaho Nursing was paying higher salaries and benefits than market criteria would require. In comparing the operating costs for Idaho Nursing with six other similar facilities in northern and central Idaho, Dr. Evans found that salaries at Idaho Nursing were substantially higher than the comparable average. Dr. Evans concluded that even if the added costs associated with PERSI were deducted, total employee compensation would still be above market; that this leads to the conclusion that Idaho Nursing did not adequately control its employment, and salary and benefits compensation; and that therefore Idaho Nursing was considered to be inefficiently managed. Thus, pursuant to the evidence presented by the Department, we hold that the hearing officer correctly concluded that Idaho Nursing was inefficiently operated and not entitled to Medicaid reimbursement for its costs above the percentile cap.

## C. THE DEPARTMENT'S WITNESS, DR. EVANS, WAS QUALIFIED TO TESTIFY AS AN EXPERT.

█ Idaho Nursing argues that the opinion of Dr. Evans should have been excluded because he was not qualified to provide an expert opinion in economic efficiency and appraisal. We disagree.

█ The qualification of an expert witness is at the discretion of the trial court (in this case the hearing officer), and will not be disturbed absent an abuse of discretion. *Sidwell v. William Prym, Inc.,* 112 Idaho 76, 81, 730 P.2d 996, 1001 (1986). The hearing officer's decision that Dr. Ev-

ans was qualified to provide expert testimony was based upon his education as an economist and his knowledge, experience and training as an appraiser regarding economic aspects of operating nursing homes. Dr. Evans has a Ph.D. in economics and taught college for several years. Since 1988, he has been a self-employed contractor doing commercial appraisals, including appraisals of nursing homes, hospitals and shopping centers. In such appraisals, issues of efficiency are critical because these appraisals require an evaluation of operating costs of a facility in comparison to operating costs within the industry. In the field of economics, one also looks at the efficient allocation of resources. Dr. Evans testified that he had reviewed or analyzed the operating costs of seventy-five nursing homes in various states, including several nursing homes in Idaho. He also received and reviewed data from costs reports provided by the Department and walked through the Idaho Nursing facility. We therefore hold that the hearing officer did not abuse her discretion in admitting this evidence.

## III.

## CONCLUSION

We hold that the decision of the hearing officer is supported by reliable, probative and substantial evidence. Idaho Nursing was able to rebut the presumption found in I.C. § 56–110(a) because it showed that some of its costs above the percentile cap, *i.e.,* its PERSI costs, were beyond its control. However, Idaho Nursing did not demonstrate it was efficiently operated during the cost reporting period. The hearing officer's conclusion that Idaho Nursing's high costs were a product of inefficient policies and management was not clearly erroneous.

We further hold that the hearing officer did not abuse her discretion in admitting into evidence the testimony and written report of the Department's expert.

Accordingly, the decision of the hearing officer is affirmed.

No attorney fees on appeal. Costs on appeal to respondent.

JOHNSON and TROUT, JJ., concur.

SCHROEDER, J., concurs in the result.

CAREY, Justice, Pro Tem., specially concurring.

I agree that the administrative decision must be affirmed on the basis of the record and the law. I write to express my distaste for a system that labels a caregiver "inefficient" because it pays its employees a living wage, because it has low employee turnover, and because it provides good-quality service.

While the Department's expert may or may not be correct in suggesting that nursing-home employees are "generally unskilled," it is undeniable that the quality of the care they give is critical to the well-being of people who are unable to care for themselves. We judges have been witnesses to horror stories of a few nursing-home employees who not only were unskilled but also were uniquely unfit to work with the elderly and the infirm. *See, e.g., State v. Grove,* 120 Idaho 950, 821 P.2d 1005 (Ct.App.1991). It is a strange world indeed that punishes a caregiver for attracting and keeping good employees.

SCHROEDER, J., concurs.